UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHGIAN
SOUTHERN DIVISION

_____

**CHRISTIAN KLEINJANS,**

    Plaintiff,

Case No. 1:24-CV-

Hon. _____

v.

**M. SCOTT KORPAK**,
**MATTHEW SHANE**,
and **ERIN MOORE**, in their official
and personal capacities,

    Defendants.
_____

## COMPLAINT AND JURY DEMAND
_____

Plaintiff Christian ("Chris") Kleinjans, by and through his attorneys, Pinsky Smith, PC, states as follows:

### JURISDICTION, VENUE, AND PARTIES

1. This is an action seeking declaratory and injunctive relief, as well as damages, for violation of Plaintiff's rights to free speech and association under the First Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983.

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. Plaintiff Chris Kleinjans is a resident of Ottawa County, in the Western District of Michigan. Plaintiff is also an elected Ottawa County Commissioner, after

1

he won a recall election to unseat another commissioner on May 7, 2024, and was sworn into office on May 28, 2024. Until June 4, 2024, Michigan State University Extension (MSU Extension) employed Plaintiff full time as a Community Nutrition Instructor in Ottawa County. Ottawa County is part of MSU Extension District 7. At the time of Defendants' termination of Plaintiff from his employment with MSU Extension, Plaintiff had been employed there for more than a decade.

4. Defendant M. Scott Korpak is the director of MSU Extension District 7. Upon information and belief, Defendant Korpak is a resident of Kent County, within the Western District of Michigan. MSU Extension has operations all over the State of Michigan, but its headquarters are located in Ingham County, within the Western District of Michigan.

5. Defendant Matthew Shane is the Associate Director of MSU Extension, responsible for field operations. Upon information and belief, Defendant Shane is a resident of Lenawee County, within the Eastern District of Michigan.

6. Defendant Erin Moore is the associate director of the MSU Extension Health & Nutrition Institute. Defendant Moore is a resident of Kent County, within the Western District of Michigan.

7. The acts that are the subject of this action occurred in Ottawa County.

8. Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9. Ottawa County (also referred to as "the County") is a local unit of government organized pursuant to the state of Michigan. It is the seventh largest county within Michigan, and it is located in the Western District of Michigan.

10. Ottawa County Board of Commissioners ("the Commission") is the governing county commission for Ottawa County, organized under state law.

### *MSU Extension in Ottawa County*

11. MSU Extension is an arm of Michigan State University that partners with counties throughout the state to provide community-based education. As part of its educational mission, MSU Extension also partners with the Michigan Department of Health and Human Services (MDHHS) to administer the Supplemental Nutrition Assistance Program Education (SNAP-Ed), a nutrition education and physical activity promotion program funded by the United States Department of Agriculture (USDA).

12. Prior to his termination, Plaintiff worked as a nutrition educator with SNAP-Ed at MSU Extension in Ottawa County. Plaintiff's position was funded by USDA through the SNAP-Ed funds provided to MDHHS.

13. MSU Extension also receives funding from the County as part of its partnership with the County. Funding is provided by contracts between the County and MSU Extension, which must be approved by the Commission. Before 2023, those contracts were approved by the Commission without controversy.

14. On November 7, 2023, the County's Finance and Administration subcommittee unanimously approved a contract to provide funding for MSU Extension in Ottawa County through the following fiscal year. The contract called for the County to provide office space, utilities, and clerical support, as well as funding for a 4-H programming coordinator.

15. The contract was scheduled to be approved by the Commission as part of its consent agenda on November 21, 2023. Before that meeting occurred, however, the Commission removed the contract from the consent agenda in an effort to exert control over MSU Extension and force it to punish Plaintiff for his political activities.

*The OI Majority*

16. Joe Moss is the Chairperson of the Ottawa County Commission. Moss was elected to the Commission in November 2022, and he was sworn into office on January 3, 2023. Moss founded Ottawa Impact ("OI"), a far-right Political Action Committee that he continues to lead, which ran a slate of candidates in the Ottawa County Commission seats in the Republican primary in August 2022. The OI slate of candidates won a majority of the Commission seats in the August 2022 Republican primary, thereby ensuring control of a majority of the Commission in the general election in November 2022, since many of the Commission races did not have Democratic opponents.

17. Allison Miedema is another Ottawa County Commissioner. Miedema was elected to the Commission in November 2022 under the OI label, and she was also sworn into office on January 3, 2023.

18. At present, OI has a voting bloc majority ("the OI Majority") of 6 to 5 commissioners. Two commissioners who originally were OI-endorsed have left OI, but they still occasionally vote with the OI Majority.

19. At its first meeting of the 2023-24 session, the Commission voted to elect Moss to serve as Chairperson of the Commission, although the then-new OI Majority had already publicly announced that Moss would be the Chairperson prior to the vote at that meeting.

20. Immediately upon taking office, the new OI Majority took a number of controversial actions. Just after being sworn in, the OI Majority on the Commission voted to demote the Public Health Officer, Adeline Hambley, to interim health officer, in anticipation of firing her and appointing their political ally instead. Hambley filed suit challenging her illegal termination, and the Michigan Court of Appeals ultimately ruled that the termination was unlawful and that Hambley remained the County's Public Health Officer.

21. The Commission's attempt to illegally terminate Hambley was one of several actions which led to a backlash against the OI Majority. In July 2023, a group of Ottawa County voters in Ottawa County District 2 began the process to recall Lucy Ebel, a member of the OI Majority and the District 2 Commissioner, based in part on her vote to change the prior Commission's resolution that led to Hambley's appointment as health officer, as a means to try to oust Hambley. The group gathered signatures in support of a recall of Ebel during the next several months.

5

22. In September 2023, as part of the battle with Hambley, the Commission voted to slash the Public Health budget. Among the funds cut from the Public Health budget were those for the County coordinator for Ottawa Food, a partnership of local public and private entities that aims to provide access to healthy and affordable food. As a result of the County's decision to cut this funding, Ottawa Food decided to suspend its operations.

23. On November 14, 2023, Ottawa Food issued a press release announcing its decision to suspend operations. The press release cited the budget cuts as the basis for its decision. Plaintiff was a member of the Ottawa Food Advisory Board, which voted on the decision to suspend operations, and his name was listed as the media contact on the press release.

24. That same day, the group collecting signatures on the petition to recall Ebel announced that it had gathered the required number of signatures to put the recall on the May ballot. Just prior to that announcement, the Ottawa County Democratic Party selected Plaintiff to run against Ebel in the recall election if it was confirmed for the May 2024 ballot. There was no public announcement of this decision because the recall election had not yet been confirmed. Plaintiff's supervisors at MSU Extension had known of his intention to run in the recall election if it was certified for the ballot since he first told Defendant Moore in the summer of 2023, who was then his District Director and immediate supervisor.

25. On November 27, 2023, the Ottawa County Clerk certified that there were sufficient signatures to place the recall of Ebel on the May ballot.

26. On December 6, 2023, Plaintiff announced publicly that he would be running against Ebel in the May election as a Democrat. He resigned from the Ottawa Food Advisory Board that same day.

### *The OI Majority's effort to punish Plaintiff through his MSU Extension employment*

27. On November 17, 2023—just three days after the announcements about Ottawa Food and the petition signatures—County Administrator John Gibbs told James Kelly, then the interim district director for MSU Extension in Ottawa County, that the contract with the Extension would not be on the Commission's consent agenda for the next meeting, scheduled for November 21, 2024. The contract had previously passed through the Finance and Administration subcommittee unanimously.

28. Kelly and Defendant Korpak, who was starting his new position as the district director for MSU Extension in Ottawa County, attended the November 21 Ottawa County Commission meeting. Kelly spoke in public comment and stated that he and Defendant Korpak had a meeting scheduled with "commissioners" for December 7, 2023, although he did not provide further detail about which commissioners would be present, the specific purpose of that meeting, or under what circumstances that meeting would take place.

29. On November 27, 2023, Plaintiff met with Defendant Moore. Moore raised the issue of Plaintiff's candidacy and the effect on MSU Extension's contract with the County. Moore told Plaintiff that if this involved any other County but Ottawa, there would not be a risk of MSU Extension being defunded because of

7

Plaintiff's political activities. However, Moore told Plaintiff that the controlling OI Majority of the Ottawa County Commission sought vengeance and would seek to defund anyone it viewed as "against" the OI Majority. Moore speculated that the MSU Extension renewal contract may have been pulled from the consent agenda because of Plaintiff's role on the Ottawa Food Advisory Board. Further, Moore expressed her view that whoever controlled the Commission "controlled" MSU Extension in Ottawa County. Defendant Moore was clear, however, that Plaintiff running for county office while working for MSU Extension was only a problem because it was in Ottawa County and would not have been a problem if "it were any other county."

30. During that meeting, Moore never told Plaintiff that there was any possibility that he would lose his job at MSU Extension if he won the recall election. On the contrary, Moore told Plaintiff that he would have to abstain on any votes related to MSU Extension if he won the Commission seat. She noted, however, that even if Plaintiff abstained from such votes due to conflict of interest, the OI Majority of the Commission might still retaliate against Plaintiff and/or MSU Extension.

31. On December 7, 2023, Defendants Kelly and Korpak attended the previously scheduled meeting with Commissioners Moss and Miedema, where Moss and Miedema raised the issue of Plaintiff's campaign against then-Commissioner Ebel.

32. Defendant Shane later described what happened at the meeting to Plaintiff, who was neither present nor invited to the December 7 meeting. Shane told Plaintiff that Shane understood the intent of the meeting was to provide an overview

8

of MSU Extension's programs to Miedema as the Commission liaison and to discuss the contract between MSU Extension and the County. As Defendant Shane described, however, Moss and Miedema soon pivoted the conversation to Plaintiff's candidacy and his work with MSU Extension. Defendants Kelly and Korpak explained that MSU Extension's Handbook policies did not prohibit Plaintiff from working there and campaigning for a seat on the Commission, and that Plaintiff had rights as a private citizen to run for office. Moss and Miedema expressed their dislike and disagreement with those policies.

33.  As Defendant Shane reported to Plaintiff when they spoke on December 14, 2023, Moss and Miedema asked that MSU Extension officials pull Plaintiff out of work in Ottawa County even during his campaign for office in the recall election, and that MSU Extension move Plaintiff to another county, another location, or some other work. Further, Defendant Shane told Plaintiff that Moss and Miedema said that the MSU Extension contract renewal would not be approved by the Commission or on the agenda until MSU Extension removed Plaintiff from work in Ottawa County. Defendant Shane told Plaintiff that the contract renewal "…for Ottawa County will be on hold indefinitely, or at least for the foreseeable future, and not make it on a board agenda to have further discussion, which obviously has impact on our 4-H and agriculture programs."

34.  Defendant Shane also reported to Plaintiff that Moss and Miedema insinuated that MSU Extension's office space in Ottawa County property would be in jeopardy. As Shane said to Plaintiff, "There was also some mention in that meeting

9

about how highly desirable our Ottawa County MSU Extension space is in that building, and that there are other departments that certainly would benefit from having access to that space as they look at restructuring some of their other departments and forming other departments and offices within the county."

35. However, Defendant Shane assured Plaintiff that even though Moss and Miedema were threatening to hold up MSU Extension's relationship with Ottawa County while Plaintiff worked for MSU Extension and was campaigning for a Commission seat, that Plaintiff was not at risk of losing his job. Defendant Shane told Plaintiff that Moss and Miedema wanted a response from MSU Extension by the following week about what it intended to do regarding Plaintiff's employment and that MSU Extension was delaying its response to Moss and Miedema.

36. Defendants never further updated Plaintiff about his employment after this December 14, 2023 meeting until after the recall election in May 2024.

37. On January 16, 2024, the OI Majority returned the MSU Extension contract renewal to the consent agenda, and it was approved unanimously by the entire Board without discussion.

38. On May 7, 2024, Plaintiff won the recall election and defeated Lucy Ebel by a 20% margin. In so doing, Plaintiff became only the second Democrat ever to win a seat on the Ottawa County Commission.

39. On May 23, 2024, Defendant Shane initiated a meeting with Plaintiff and told him that he could not work at MSU Extension while he was an Ottawa County Commissioner. Defendants Allen and Moore were also present in the meeting.

Defendant Shane told Plaintiff that he was a "valued" employee, but that he could not continue to work for MSU Extension while he was a County Commissioner because it would violate the MSU Extension Handbook – the same Handbook that Shane told Moss and Miedema in December did not prevent Plaintiff from holding both roles. Defendant Shane also told Plaintiff that being in both roles would violate a state law prohibiting the holding of more than one "incompatible" public offices, i.e., Mich. Comp. Laws § 15.181 et seq. Defendant Shane told Plaintiff that he and the others did not see a path for Plaintiff to continue working for MSU Extension while he was an Ottawa County Commissioner, even in a different capacity or in another county.

40. Defendants told Plaintiff that MSU Extension was placing him on unpaid leave through December 31, 2024. Defendants told Plaintiff his employment would be permanently terminated if he won the full four-year Commission term in November 2024. Finally, Defendants told Plaintiff that if he did not agree to the plan wherein Defendants were placing him on unpaid leave through December 31, 2024, he would be permanently fired immediately.

41. When Plaintiff asked why he could not simply take a transfer to another county if MSU Extension was concerned about a conflict of interest with Ottawa County, Defendant Shane told him that he was "oversimplifying" the alleged problem. Shane said, "Because Extension is a statewide, county-wide organization that has many partnerships in Ottawa County and connections that you work with that have some connection to Ottawa County government … there's a lot of implications of how

11

Extension does work in the county. It's not necessarily just about one contract and one budget vote. That's not where the university sees the conflict. Inherently, that's part of it, but it's not the whole of it. … Because of the nature of the work that we do within the county, it's impossible to separate the work of Extension and the role of county commissioner."

42. Upon information and belief, though, the real reason that Defendants put Plaintiff on unpaid leave with a plan to fire him entirely if he won a regular four-year term in November 2024 was because of: (a) Plaintiff's political membership in the Democratic Party and filing to run as a Democrat; (b) Plaintiff's lack of alignment with the OI Majority; and (c) the OI Majority's intimidation of Defendants and either actual or implied threat of retaliation against MSU Extension if MSU Extension did not terminate Plaintiff's employment.

43. By May 23, 2024, the filing deadline for a candidate to run for county office in the August 2024 primary and November 2024 general elections had already passed as of April 23, 2024. Had Plaintiff decided he needed to withdraw from the race because he could not permanently risk his employment with MSU Extension by running and potentially winning a regular four-year term in November 2024, his withdrawal from the race would have meant there was no Democrat on the ballot in the District 2 Commission election – and no opposition candidate on the ballot to whoever won the Republican primary, which includes the recalled Ebel.

44. Upon information and belief, Defendants were the final decisionmakers on behalf of MSU Extension and all participated in the decision to put Plaintiff on

12

unpaid leave through December 31, 2024, with a plan to terminate his employment entirely if he won a four-year Commission term in November 2024.

45. Plaintiff ultimately refused to agree to remain on unpaid leave and protested the lawfulness of Defendants' decisions. Defendants permanently terminated Plaintiff's employment effective June 4, 2024.

46. On June 6, 2024, Interim County Administrator Jon Anderson emailed Plaintiff, saying, "Hi Chris – hope all is well and you're settling in. I had a reminder from my notes to check with you about your position with MSU. I do not have any personal knowledge about a potential conflict of interest, but I recall there was a question about a potential conflict of interest when you were elected. If there is anything you need, please reach out." Upon information and belief, Anderson has no prior experience as a county administrator or in county administration. However, Anderson is the OI-endorsed candidate for County Sheriff in the November 2024 election. There has been no mention at a public meeting about a conflict of interest with Plaintiff's board service and his job with MSU Extension. The most likely reason that Anderson would have raised this issue with Plaintiff is because of private direction from the OI Majority related to Plaintiff's job.

### COUNT I – VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION – 42 U.S.C. § 1983 AS TO ALL DEFENDANTS

47. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

48. Defendants' actual reason for the decision to place Plaintiff on unpaid leave and ultimately to fire him from his job is that they have bowed, and are bowing,

13

to political pressure from the OI Majority on the Ottawa County Commission. The OI Majority placed political pressure on Defendants to retaliate against Plaintiff for Plaintiff running against and winning a recall election to unseat their political ally, Lucy Ebel. Defendants do not have a non-discriminatory reason to fire Plaintiff and have merely capitulated to the OI Majority.

49. In addition, upon information and belief, the OI Majority applied pressure to Defendants to fire or move Plaintiff's employment, and otherwise negatively impact Plaintiff's working conditions and livelihood, in an effort to deter a viable candidate from running against Ebel. Finally, the OI Majority also hoped to punish and retaliate against Plaintiff for his political opposition to the OI Majority's budget cuts that led to the elimination of the Ottawa Food coordinator, and the OI Majority applied pressure to Defendants to punish Plaintiff for this reason as well.

50. Had Plaintiff run for political office on his own time in another county, or had he run as an OI-aligned Republican in Ottawa County, Defendants would not have feared negative consequences from the OI Majority and would not have caved to that pressure by terminating Plaintiff's employment.

51. Defendants are treating Plaintiff differently and making decisions about his employment based on Plaintiff's political beliefs and memberships, and Plaintiff's candidacy for public office.

52. Defendants' stated reasons for terminating Plaintiff's employment are neither legitimate, correct, nor the actual motivations for their actions. Defendants'

stated reasons are a pretext for unlawful discrimination which violates the First Amendment.

53. Defendants are state actors.

54. Defendants' actions violated Plaintiff's First Amendment rights.

## RELIEF SOUGHT

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Declare that Defendants must adopt and abide by a policy of non-discrimination for outside political activities by employees on their personal time;

B. Declare that Defendants must return Plaintiff to his employment position immediately;

C. Award Plaintiff his economic damages in the form of back wages;

D. Award Plaintiff compensation for all of his non-economic damages, including pain, suffering, stress and anxiety;

E. Award Plaintiff punitive and exemplary damages;

F. Award Plaintiff costs and reasonable attorney fees; and

G. Award Plaintiff such other relief as may be just and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: June 21, 2024         By:   /s/ Sarah R. Howard
                                    Sarah Riley Howard
                                    Elizabeth L. Geary
                                    146 Monroe Center N.W., Suite 418
                                    Grand Rapids, MI 49503
                                    (616) 451-8496
                                    showard@pinskysmith.com

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

                                                          PINSKY SMITH, PC
                                                          Attorneys for Plaintiff

Dated: June 21, 2024        By:    /s/ Sarah R. Howard
                                                            Sarah Riley Howard
                                                            Elizabeth L. Geary
                                                            146 Monroe Center St NW, Suite 418
                                                           Grand Rapids, MI 49503
                                                           (616) 451-8496
                                                           showard@pinskysmith.com