UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

**CHRISTIAN KLEINJANS**,   Case No. 1:24-CV-643

            Hon. Hala Y. Jarbou

 Plaintiff,

v.

**M. SCOTT KORPAK**,      **ORAL ARGUMENT**
**MATTHEW SHANE**,      **REQUESTED**
**ERIN MOORE**, and **JOE MOSS**,
in their official and personal capacities,

 Defendants.

# PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT MOSS

Defendant Joe Moss spearheaded controversial policies as Chair of the Ottawa County Commission (the Commission). Those policies included budget cuts that negatively impacted Ottawa Food, a program aimed at preventing food insecurity. Plaintiff Christian Kleinjans spoke out against those policies and against members of the Commission who advocated for them. Despite his power and position, Moss could not handle public criticism of his decisions. Rather than engage in the marketplace of ideas and try to persuade others, Moss tried to silence Plaintiff. Moss pressured Plaintiff's employer, Michigan State University Extension (MSUE) to reign in Plaintiff's speech and remove him from his work in Ottawa County. To ensure that MSUE knew he meant business, Moss held up a funding agreement between Ottawa County and MSUE known as the Memorandum of Agreement (MOA).

Moss attempts to evade accountability for his actions, arguing that MSUE did not bend to his will. Contrary to Moss's assertion, however, "no harm, no foul" is not a defense to a violation of the First Amendment. Moss violated Plaintiff's First Amendment rights when he threatened MSUE with a loss of county funding as a means of coercing MSUE to suppress Plaintiff's speech. Even though MSUE initially refused to cede to Moss's demands, the threats themselves were sufficient to chill protected conduct and amounted to a First Amendment violation. Plaintiff has produced significant evidence of Moss's unlawful conduct, such that no reasonable jury could find in favor of Moss. Accordingly, Plaintiff is entitled to summary judgment on the issue of liability.

# ARGUMENT

## I. Moss's efforts to silence Plaintiff violated the First Amendment.

The record is clear that Moss did not like Plaintiff's statements criticizing Moss's policy decisions, and that Moss wanted such statements to stop. Moss knew that he could not directly suppress Plaintiff's speech, however, so he tried to get Plaintiff's employer to do it for him. There is no dispute that Moss complained about Plaintiff's speech to MSUE, and that he told MSUE that he did not believe that Plaintiff should be allowed to post on social media about the funding cuts to Ottawa Food.

The First Amendment prohibits Moss from doing "indirectly what [he] is barred from doing directly[.]" *NRA of Am. v. Vullo*, 602 U.S. 175, 188 (2024). As such, Moss could not "coerce [MSUE] to punish or suppress disfavored speech on [his] behalf." *Id.* And yet, that is exactly what Moss did. Like the Defendant in *Vullo*, 602 U.S. 175, Moss wielded his power as a government official to suppress speech using MSUE as an intermediary. *Id.* at 198.

Moss argues that his actions are permissible because he did not explicitly threaten MSUE with a loss of funding if MSUE failed to do Moss's bidding. As the Supreme Court recognized, however, "threats need not be explicit[.]" *Vullo*, 602 US at 188. Rather, a government official engages in impermissible coercion by engaging in "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's

2

speech." *Id.* at 191. There is significant record evidence that Moss's conduct met that threshold.

Moss's assertion that there is no admissible evidence of his threats against MSUE is simply false. The declaration from John Gibbs, the former County Administrator, states that Moss told Gibbs to inform Defendant James Kelly, then the interim director for MSUE in Ottawa County, that the MOA was being removed from the agenda indefinitely and that Moss was unhappy with Plaintiff's speech. Gibbs believed this constituted a threat to withhold funding unless MSUE took action against Plaintiff, as did every MSUE official involved. Moss reinforced those beliefs when he met with Kelly and Scott Korpak, the new MSUE district director for Ottawa County. Kelly's notes state that Moss conveyed that MSUE would not have support on the Commission until it could "appropriately" handle Plaintiff's "indiscretions" – i.e., his statements as a private citizen criticizing Moss and OI. (Korpak Dep. Ex. 2, PageID.1530-1531.) Plaintiff need not provide evidence that Moss explicitly spelled out the consequences to MSUE if it failed to heed his request to silence Plaintiff. Moss's conduct was reasonably understood by all involved as a threat that the Commission would withhold funding if MSUE failed to punish or suppress Plaintiff's speech.

Moss's argument that the First Amendment protected his right to "complain" about Plaintiff's statements fares no better. Moss had every right to criticize Plaintiff's speech and try to convince others that Plaintiff's statements were false. *See Vullo*, 602 US at 188. What Moss could not do, however, was "use the power of

3

the State to punish or suppress [Plaintiff's] disfavored expression." *Id.* If Moss had simply used one of his many modes of communication to criticize Plaintiff or engage in the marketplace of ideas, he would have been well within his rights. Unfortunately, Moss did not try to win an argument in the political sphere by "rely[ing] on the merits and force of [his] ideas, the strength of [his] convictions, and [his] ability to inspire others." *Id.* Instead, Moss used his power over MSUE's government funding to coerce MSUE into silencing Plaintiff. That conduct is not protected by the First Amendment.

## II. Moss's threats amounted to an adverse action, regardless of how MSUE responded.

Moss asserts a number of different reasons why he believes his actions did not amount to an adverse action. He argues that there was no adverse employment action, that mere threats cannot constitute an adverse action, and that Plaintiff was not injured by Moss's efforts to silence him. Each of these arguments is contradicted by precedent in this Circuit.

Moss ignores that Plaintiff need not demonstrate an adverse *employment* action in a claim against a non-employer. Rather, "any action that would deter a person of ordinary firmness from exercising protected conduct will suffice." *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) ("*Fritz I*"). Thus, Moss's argument that a transfer does not amount to an adverse employment action, as well as the employment discrimination cases he cites in support of that proposition, have little bearing on the facts at issue. Moss engaged in an adverse action when he threatened Plaintiff's employer with a loss of funding until it could

"appropriately" handle Plaintiff's protected conduct – i.e., have Plaintiff "change [his] behavior." *See Fritz I*, 592 F.3d at 726. Whether Moss suggested that be accomplished by transferring Plaintiff or some other means has little bearing on the question of whether he engaged in an adverse action.

Moss's reliance on MSUE's response to his threats is misplaced. Moss argues that there was never an "adverse consequence" to Plaintiff because the MOA was ultimately approved and MSUE did not transfer Plaintiff out of Ottawa County. Plaintiff need not show that he suffered an adverse consequence. Rather, the relevant inquiry is whether Moss's actions would be sufficient to deter an average citizen from speaking out in opposition to Moss and his policies. *See Fritz I*, 592 F.3d at 724. Moss's efforts to have Plaintiff's employer silence him and remove him from Ottawa County meet that test.

Moss does not cite any support for his proposition that an ordinary person would continue to engage in protected conduct upon learning that their employer stood up to a threat from a public official. Moreover, similar arguments have been rejected by other district courts in the Sixth Circuit. *See Kennedy v. Smith*, No. 23-13185, 2025 U.S. Dist. LEXIS 171546 (E.D. Mich. July 15, 2025); *Davis v. Hall*, 192 F. Supp. 3d 847 (E.D. Mich. 2016).[1] Those courts recognized that it is a public official's <u>effort</u> to harm another based on protected conduct – not the <u>result</u> – that

---

[1] These cases are discussed more fully in Plaintiff's brief in opposition to Moss's motion for summary judgment. (Page.ID 1732-1734.)

5

constitutes an adverse action. *See Kennedy*, 2025 U.S. Dist. LEXIS 171546, at *10-12; *Davis*, 192 F. Supp. 3d at 857.

In focusing on the outcome of his threats, Moss improperly conflates the adverse action element of a claim with the issue of damages. *See Kennedy*, 2025 U.S. Dist. LEXIS 171546, at *10. The "salient question" in determining whether there was an adverse action is not how an individual was damaged, but whether a reasonable person would be deterred from speaking out. *See id.* at *11. Thus, Plaintiff need not show that the harm he suffered from Moss's threats is compensable in order to establish an adverse action. *See id.* at *12. He must only show that Moss's conduct would deter a reasonable person from speaking out against Moss and his political allies.

Moss ignores the "practical reality" that even unsuccessful threats to one's employment may chill protected speech. *See Davis*, 192 F. Supp. 3d at 852. That is particularly true here in light of the power that Moss had over MSUE. Plaintiff knew that MSUE's office space and funding were heavily dependent upon support from the Commission. He also knew that MSUE believed Moss was vindictive and would go after his perceived political enemies, and that his retribution could last for an indefinite period. (PI Hrg. Tr. at 25-26, PageID.266-267.) Particularly in light of those circumstances, a reasonable person would be deterred from speaking out against Moss in the future, even if his employer stood up for him initially.

Moreover, Sixth Circuit precedent is clear that threats – even if not carried out – may constitute an adverse action. *See Pasley v. Conerly*, 345 F. App'x 981, 985

6

(6th Cir. 2009) ("[A] mere threat is actionable if it otherwise meets the standard that it would deter a person of ordinary firmness from engaging in a protected activity.") Thus, Moss's reliance on *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010), is misplaced. In that case, a prisoner alleged that the defendants threatened him with transfer to a less desirable facility in retaliation for his protected conduct. *Id.* at 470. The court noted that a threat can constitute an adverse action if it would deter a person of ordinary firmness from engaging in protected conduct. *Id.* at 472. The court explained that it is not "overly difficult" for a plaintiff to make such a showing, and that the de minimis threshold is intended to weed out only those claims involving truly inconsequential actions. *Id.* at 472-473. Thus, the court concluded that the defendant's threat to transfer the plaintiff amounted to an adverse action. *Id.* at 475.

Moss offers no support for his repeated assertion that Plaintiff suffered no injury. As the Sixth Circuit has made clear, "deprivations of First Amendment rights are themselves injuries[.]" *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015). Although Moss frames the issue of one of "injury," his argument is really that Plaintiff had no damages. He may pursue that argument at a later stage, but it is not relevant to whether Plaintiff suffered an adverse action. *See Kennedy*, 2025 U.S. Dist. LEXIS 171546, at *10 (concluding that the issue of damages was not relevant in determining whether there was an adverse action).

The adverse action inquiry does not hinge on MSUE's response to Moss's threats or the extent to which Plaintiff was damaged by those threats. The question

7

is whether Moss's conduct – threatening Plaintiff's employer's public funding in an effort to silence and punish Plaintiff – would chill a person of ordinary firmness from speaking out. That question must be answered in the affirmative.

### III. Plaintiff does not need to show that Moss had decision-making authority over his employment.

Moss argues that the claims against him must fail because he did not have the ability to threaten the nature of Plaintiff's employment. This argument flies in the face of the evidence and Sixth Circuit precedent. The evidence is clear that Moss held significant power over MSUE's operations in Ottawa County and that MSUE believed that the Commission would not approve the MOA unless there was a change in Plaintiff's employment status. Moreover, the Sixth Circuit precedent is clear that a public official's lack of decision-making authority is not dispositive, particularly where the public official has power over a plaintiff's employer.

Moss relies on *Josephson v. Ganzel*, 115 F.4th 771 (6th Cir. 2024), but fails to mention that case allowed claims to proceed against individuals who had no decision-making authority with regard to the plaintiff's employment. Three of the defendants in that case were not involved in the decision not to renew the plaintiff's contract. *Id.* at 787. One of the defendants "tried to impact what [the plaintiff] said to his students." *Id.* The other two defendants tracked the plaintiff's behavior and monitored his performance, and their documentation was used in the non-renewal decision. *Id.* at 788. Even though those defendants had no authority over the plaintiff's employment contract, the court concluded that there was sufficient

8

evidence to demonstrate an adverse action because the defendants' actions were designed to threaten the plaintiff's livelihood. *Id.*

It is difficult to see how the decision in *Josephson*, 115 F.4th 771, bolsters Moss's argument. The defendants in that case not only lacked decision-making authority, they also lacked any power over those that had such authority. Nonetheless, the court concluded that there was an adverse action. In contrast, Moss had significant power over MSUE, which he used to try to coerce MSUE to silence Plaintiff and remove him from his position in Ottawa County.

Moss's assertion that he did not have the ability to threaten the nature of the plaintiff's employment flies in the face of Sixth Circuit precedent. *See Fritz I*, 592 F.3d 718.[2] The facts in this case are largely similar to those alleged by the plaintiff in *Fritz I*. In that case, the plaintiff alleged that a township supervisor told the plaintiff's employer that it would have problems in the township because of the plaintiff's speech. *Id.* at 721. The court concluded that if the defendant made statements intended to communicate to plaintiff's employer that its dealings with the township would improve if it could "reign in Plaintiff's exercise of her First Amendments rights," that would amount to an adverse action. *Id.* at 725. The record evidence demonstrates that Moss did exactly that – he told MSUE officials that he was unhappy with Plaintiff's speech, that he was holding up MSUE's

---

[2] *Fritz I*, 592 F.3d 718 and the Sixth Circuit's later decision in *Fritz v. Charter Twp. of Comstock*, 463 Fed App'x 493 (6th Cir. 2012) ("*Fritz II*") are discussed more thoroughly in Plaintiff's response to Moss's motion for summary judgment. (PageID. 1726-1729.)

9

funding agreement in response, and that MSUE would not have the Commission's support until it could reign in Plaintiff's speech. The decision in *Fritz I* makes clear that such conduct constitutes an adverse action.

Moss's argument that the Court should not rely on *Fritz I*, 592 F.3d 718 or other decisions issued at the pleadings stage is without merit. In fact, it is directly refuted by Moss's own cited case, *Josephson*, 115 F.4th 771, which involved a summary judgment motion but relied heavily on *Fritz I*, 592 F.3d 718. The Sixth Circuit's decision in *Fritz I* remains good law and its legal analysis and conclusions can be used to evaluate First Amendment claims at any stage, including at summary judgment. The fact that the Sixth Circuit affirmed a grant of summary judgment in *Fritz II*, 463 Fed App'x 493 (6th Cir. 2012) after the Plaintiff failed to provide evidence to support her allegations has no bearing on the precedential value of *Fritz I*. Any argument to the contrary is belied by the Sixth Circuit's decision in *Josephson*, 115 F.4th 771, which is based almost entirely on the analysis in *Fritz I*, 592 F.3d 718.

Moss devotes pages to explaining the difference between a motion filed at the pleading stage and one filed at the summary judgment stage but fails to explain how that is relevant here. Moss's assertion that Plaintiff cannot rest on the allegations in the complaint is beyond dispute. Moss fails to identify a single instance in which Plaintiff has attempted to do so because there is not one – Plaintiff has produced significant record evidence to demonstrate that Moss was displeased with Plaintiff's speech and that he attempted to coerce MSUE to silence

10

Plaintiff and remove him from Ottawa County, Thus, this case is completely unlike the cases that Moss cites where a plaintiff could not prove his allegations after discovery. In this case, the evidence uncovered in discovery is far more damning than Plaintiff's initial allegations.

Sixth Circuit precedent has established that a plaintiff can demonstrate an adverse action by a public official who has no decision-making authority over the plaintiff's employment, particularly where the public official has the power to impact the employer's ability to do business. Although Moss did not have the power to directly affect Plaintiff's employment, he had the power to substantially affect MSUE's ability to do business in Ottawa County. Moss communicated to MSUE that its relationship with Ottawa County, including its ability to get funding and rent-free office space, was dependent on it reigning in Plaintiff's exercise of his First Amendment rights. The Sixth Circuit has made clear that such conduct constitutes an adverse action.

### IV. Plaintiff's protected conduct was a motivating factor for Moss's threats.

Moss argues that any threats against MSUE cannot constitute an adverse action, and thus Plaintiff cannot demonstrate causation. In other words, there was no adverse action and thus no causation. As previously discussed, Moss's view of what constitutes an adverse action is contradicted by precedent and common sense. Plaintiff has demonstrated that Moss's threats amounted to an adverse action, and that they were motivated by Plaintiff's conduct. Accordingly, Plaintiff can satisfy the third element of his prima facie case.

## CONCLUSION

Because there is no genuine dispute of material facts as to Defendant Moss's liability, Plaintiff is entitled to summary judgment as to liability on all counts of his First Amended Complaint. He respectfully requests that this Court grant his Motion, and schedule further proceedings to determine his damages.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: November 13, 2025     By:    /s/ Sarah R. Howard
Sarah Riley Howard
Elizabeth L. Geary
146 Monroe Center St NW, Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com