UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CHRISTIAN KLEINJANS,

    Plaintiff,

v.

M. SCOTT KORPAK, MATTHEW
SHANE, ERIN MOORE, and
JOE MOSS, in their official and
personal capacities.

    Defendants.

Case No. 1:24-CV-643

Hon. Hala Y. Jarbou

---

Sarah R. Howard (P58531)
Elizabeth L. Geary (P76090)
Pinsky Smith, PC
Attorneys for Plaintiffs
146 Monroe Center St. NW, Suite 148
Grand Rapids, MI 49503
T: (616) 451-8496
E: showard@pinskysmith.com
E: egeary@pinskysmith.com

Matthew R. Daniels (P75601)
MSU Office of General Counsel
Attorney for MSU Defendants
426 Auditorium Road, Room 494
East Lansing, MI 48823
T: (517) 353-4959
E: danie188@msu.edu

Michael S. Bogren (P34835)
Plunkett Cooney
Attorney for Defendant Moss
333 Bridge Street NW, Suite 530
Bridgewater Place
Grand Rapids, MI 49504
T: (269) 226-8822
E: mbogren@plunkettcooney.com

---

**DEFENDANTS M. SCOTT KORPAK, MATTHEW SHANE,
AND ERIN MOORE'S REPLY IN SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(a)</u>**

**\*ORAL ARGUMENT REQUESTED\***

I. **INTRODUCTION**

In their opening brief the MSU Defendants establish that Plaintiff's First Amendment retaliation claim should be dismissed pursuant to Fed. R. Civ. P. 56(a) because Plaintiff cannot satisfy the required elements of a prima facie claim of First Amendment retaliation. Specifically, the MSU Defendants argue that there is insufficient evidence here for Plaintiff to satisfy the required showing that Plaintiff's decision to run for an Ottawa County Commissioner seat as a democrat was a substantial or motivating factor in the MSU Defendant's decision to terminate him. In response, Plaintiff makes a number of arguments, all of which fail to demonstrate that there is some genuine issue of material fact in this respect.

First, Plaintiff argues that the temporal proximity of the MSU defendants' belief that Plaintiff could not serve simultaneously as a community nutrition instructor and an Ottawa County Commissioner sufficiently proves the required causation element. This argument fails because (a) the MSU Defendants belief in this regard is not an adverse action as a matter of law; and (b) Plaintiff does not couple this alleged temporal proximity with other indicia of retaliatory motive. Next, Plaintiff makes a number of arguments in support of the assertion that Plaintiff's motion for summary judgment should be granted because the MSU Defendants cannot demonstrate by a preponderance that their employment decision would have been the same absent Plaintiff's protected speech.[1] For the reasons detailed below, each of these arguments should be ignored.

---

[1] The MSU Defendants previously filed their response to Plaintiff's cross-motion for summary judgment, and they incorporate the arguments and law set forth therein. (ECF No. 112).

## II. ARGUMENT

### A. Plaintiff's temporal proximity argument fails for a combination of reasons.

To establish a prima facie case of First Amendment retaliation, a plaintiff must prove (1) they engaged in protected conduct; (2) the defendant took an adverse action against them; and (3) a causal connection exists between elements one and two. *Rudd v. City of Norton Shores*, 977 F.3d 593, 513 (6th Cir. 2020). A plaintiff claiming they have been discharged from public employment in violation of the First Amendment must show not only that they were discharged because of their political activities, but that their constitutionally protected activity was a "substantial" or "motivating factor" behind the defendant's decision to terminate. *Conklin v. Lovely*, 834 F.2d 543, 546 (6th Cir. 1987) (quoting *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274; 287 (1977). The MSU Defendants establish in their opening brief that Plaintiff's claim should be summarily dismissed because no reasonable juror could find that that Plaintiff's protected speech was a substantial or motivating factor in his termination. In response, Plaintiff argues that the temporal proximity of the MSU Defendants' belief in December of 2023 that Plaintiff could not serve simultaneously as an Ottawa County Commissioner and a community nutrition instructor in relation to his decision to campaign for an Ottawa County Commissioner seat supports an inference of causation. (ECF No. 108, PageID.1645-1647). This argument fails.

### 1. The MSU Defendants' belief regarding Plaintiff's ability to serve in both roles in December of 2023 does not constitute an adverse action.

Traditionally, the term "adverse action" has arisen from the employment context, and refers to "discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote. *Kubala v. Smith*, 984 F.3d 1132, 1140 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)).[2]

---

[2] The Sixth Circuit has recognized other forms of adverse action in the First Amendment retaliation context. See *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (defamatory

To evaluate whether conduct constitutes an "adverse action," courts ask whether the action would deter a person of "ordinary firmness" from engaging in the protected activity. *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).[3] For an action to be sufficiently adverse, it must involve a real injury:

> We recognize that in a retaliation case, since there is no justification for harassing people for exercising their constitutional rights the effect on freedom of speech need not be great in order to be actionable. Nevertheless, since §1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we trivialize the First Amendment by sanctioning a retaliation claim even if it unlikely that the exercise of First Amendment rights was actually deterred.

*Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (citations omitted). "[W]hile certain threats and deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X*, 175 F.3d at 398.

Here Plaintiff's temporal proximity argument fails because the MSU Defendants' belief that he could not simultaneously serve as an Ottawa County Commissioner and a community nutrition instructor does not constitute an adverse action. First, Plaintiff alleges that he was not made aware of the fact that the MSU Defendants did not believe that he could serve simultaneously in both roles until May of 2024. (ECF No. 1636, PageID.1636; Ex. 1, 86-87). Plaintiff cannot argue that some unknown belief or decision on the part of the MSU Defendants would deter a plaintiff from exercising their First Amendment rights. Second, Plaintiff does not, and cannot, argue that

---

statements); *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999) (embarrassment, humiliation, and emotional distress); *Ely v. Dearborn Heights Sch. Dist. No. 7*, 150 F. Supp. 3d 842, 853 (E.D. Mich. 2015) (letters of reprimand).

[3] The person-of-ordinary-firmness test is calibrated to the plaintiff, such that a prisoner may "have to endure more than" the average public employee, who themselves may "have to endure more than the average citizen." *Fritz*, 592 F.3d at 724 (6th Cir. 2010).

the alleged adverse action here caused any concrete injury or damages.[4] On the contrary, it is undisputed that the MSU Defendants permitted Plaintiff to run for the Ottawa County Commission while maintaining his employment as a community nutrition instructor. (ECF No. 95-21, PageID.1399; Ex 1, 78-85). Thus, Plaintiff's assertion that the MSU Defendants' belief in December of 2023 that he could not serve in both roles is wholly inconsequential and cannot be considered an adverse action for purposes of any temporal proximity argument in support of the required causation element of Plaintiff's First Amendment retaliation claim.

### 2. Plaintiff's temporal proximity argument also fails because it is not adequately supported by other evidence of retaliatory motive.

"In analyzing the facts in temporal proximity cases, [Courts] have always looked to the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). Further, "[t]he law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metro Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007). In First Amendment retaliation cases, there must be other indicia of retaliatory conduct. *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019); see also *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) ("When other evidence of retaliatory motive is lacking, [the Sixth Circuit has] been reluctant to hold that temporal proximity is sufficient to establish causation.") (citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). The evidence that Plaintiff cites to in support of his causation argument based on temporal proximity can reasonably be summarized as follows: (1) James Kelly, a non-party, allegedly told Joe Moss that Plaintiff would be terminated from his MSU Extension employment if elected to the Ottawa County Board; and (2) the MSU Defendants

---

[4] For purposes of their motion for summary judgment, the MSU Defendants concede only that Plaintiff's separation from the University, which occurred on June 4, 2024, qualifies as an adverse action under the applicable law.

were aware that the Memorandum of Agreement ("MOA") had been removed from the Ottawa County Commission's consent agenda in response to Plaintiff's decision to run for an Ottawa County Commissioner seat. (ECF No. 108, PageID.1646-1647).

### i. James Kelly's alleged communications with Joe Moss.

First, the MSU Defendants did not tell Joe Moss that Plaintiff would be terminated from his MSU Extension employment if he was elected to the Ottawa County Board. In support of his argument here Plaintiff cites to a small portion of Joe Moss's testimony, wherein he states he believes James Kelly, a non-party, told him at a meeting in December of 2023 or January of 2024 that Plaintiff was free to campaign for an Ottawa County Board seat while working as a community nutrition instructor but if he was elected that may create a problem. (*Id*., PageID.1640; PageID.697-698). Scott Korpak testified that he did not tell Joe Moss that if Plaintiff was elected he would be terminated, and that he doesn't know whether James Kelly communicated that to Joe Moss. (Ex 2, 69). James Kelly testified that throughout the December 2023 and January 2024 communications between MSU Extension and Joe Moss, he never told Joe Moss that Plaintiff would be terminated from his employment if he was elected. (Ex 3, 35-38).

Moreover, Plaintiff's argument that the MSU Defendants somehow sought to appease Joe Moss with a "consolation gift" (ECF No. 108, PageID.1647) based on how they would handle Plaintiff if he was elected to the Ottawa County Board is unavailing. The MSU Defendants did not terminate Plaintiff after he was elected to the Ottawa County Board in May of 2024, rather Plaintiff was offered the opportunity to go on unpaid leave during his initial term as an Ottawa County Commissioner so that if he was not reelected to the Board in November of that year, he would be able to return to his community nutrition instructor position in Ottawa County. (ECF No. 95-11, PageID.1344). Matt Shane testified as follows:

> [B]ecause this special election was viewed as an interim role, that we would be willing to grant an unpaid leave of absence during his tenure as an interim commissioner until the election results were known in November through the end of the calendar year so that if he was not elected in November, he could return to his position.
>
> ***
>
> [T]hat was us recommending to general counsel and Academic HR as a possible option, because we were trying to extend an olive branch, so to speak, that this is an interim position, and we were willing to – we were willing to grant an unpaid leave of absence during that interim time.
>
> ***
>
> We weren't – we weren't wanting him to leave the organization. So that was why we suggested it as a viable alternative for that six-month or seven-month period of time.

(Ex 4, 97-100). Therefore, Plaintiff realistically could have served as an Ottawa County Commissioner from May of 2024 to November of 2024 while on unpaid leave from MSU Extension, and then fully resumed his community nutrition instructor role in Ottawa County if he was not reelected in November. This can hardly be considered a "consolation prize" for Joe Moss, if his goal was to (1) prevent Plaintiff from campaigning in the first place; or alternatively (2) prevent Plaintiff from serving as an Ottawa County Commissioner in the event he was elected.

## ii.  Pressure by Joe Moss to take adverse action against Plaintiff.

In his response Plaintiff places a great deal of emphasis on the fact that Joe Moss sought to pressure the MSU Defendants to take adverse action against him by holding up approval of the MOA, and that it was possible that Mr. Moss might continue to threaten MOA funding in the future. (ECF No. 108, PageID.1633-1640). Plaintiff argues that these facts weigh in favor of finding that the MSU Defendants' decision to terminate Plaintiff was caused by his protected political speech. (*Id*., PageID.1646-1647). This argument is not supported by the record.

Matthew Shane testified expressly that concerns relating to future MOA approvals in Ottawa County did not factor into any decision relating to Plaintiff's employment. (Ex 4, 144-150). As part of that testimony Mr. Shane explained that MSU Extension has similar agreements

with eighty counties, most of which are approved annually. (*Id*.).  He also testified that although MSU Extension has an interest in getting the MOA approved and in maintaining a good working relationship with the Ottawa County Board, the MSU Defendants would not terminate or take adverse action against Plaintiff to realize those goals.[5] (*Id*.). M. Scott Korpak offered testimony consistent with Mr. Shane's regarding the importance of getting the MOA approved and fear of continued pressure by Joe Moss. (Ex 2, 70-72). Finally, it is undisputed that when faced with pressure by Joe Moss to move Plaintiff out of the MSU Extension office in Ottawa County during his campaign for the Ottawa County Board, the MSU Defendants declined to do so and actively sought to protect his First Amendment right to campaign. (ECF No. 95-21, PageID.1399; Ex 1, 78). Further, there is absolutely no evidence that Joe Moss, or any other party for that matter, continued to pressure the MSU Defendants to take any other adverse action against Plaintiff after January of 2024, or otherwise threaten MSU Extension funding. (Ex 1, 143; Ex 2, 133-135; Ex 4, 150; Ex 6, 126-128; Ex 7, 225-229).

### B. Plaintiff's "advice of counsel" argument should be ignored.

Plaintiff argues that because the MSU Defendants' reliance on the Michigan Incompatible Public Offices Act, MCL 15.181 *et seq*. as one of the three lawful bases for Plaintiff's termination may have been informed by MSU legal counsel, the MSU Defendants have necessarily invoked an advice of counsel defense, which is waived at this stage in the litigation. (ECF No. 108, PageID.1649-1651). In support of this argument Plaintiff cites to *Bauer v. Cnty. of Saginaw*, No. 14-11158, 2015 WL 12806496 (E.D. Mich. Feb. 23, 2015), and *Doe v. Schuylkill Cnty. Courthouse*,

---

[5] Relevant to this testimony Mr. Shane explained that the total value of the Ottawa County MOA was in the $300,000 to $350,000 range, a fraction of the total amount of county funding MSU Extension receives across the state ($15.3 million), and an even smaller percentage of total MSU Extension revenue ($106.9 million). (Ex 4, 144-150 (financial records referred to in Mr. Shane's Testimony as Exhibit 14 attached here as Ex 5)).

343 F.R.D. 289 (M.D. Pa. 2023), neither of which were decided in the context of a First Amendment Retaliation claim, and neither of which is binding on this Court.

Moreover, this issue has already been settled through pre-trial motion practice. Plaintiff filed a motion to compel disclosure of unredacted email communication from MSU legal counsel regarding the Incompatible Public Offices Act based on the argument that the MSU Defendants waived attorney-client privilege for those records by invoking an advice of counsel defense. (ECF No. 68, 69). Magistrate Judge Kent heard oral argument on the matter and denied the motion. (ECF No. 87). Plaintiff filed an appeal of Judge Kent's order, which this Court denied.[6] (ECF No. 100, 105). The Court correctly reasoned that Plaintiff's argument "rests on the flawed assumption that any reference a party makes to guidance from their attorney amounts to an advice of counsel defense." (ECF 105, PageId.1590-1591). Further, the Court concluded that the MSU Defendants argument that Plaintiff cannot establish the required causal link between protected activity and adverse action does not require them "to establish that they were in fact motivated by the advice of MSU attorneys to fire [Plaintiff]; it rests entirely on the *absence* of evidence supporting [Plaintiff's] claim." (*Id*., PageID.1593).

### C. The MSU Defendants' reliance on time commitment concerns as a basis for Plaintiff's termination is well-founded.

The MSU Defendants have testified credibly and consistently throughout this case that one of the reasons for Plaintiff's termination was that he would not be able to complete his regularly assigned duties as a community nutrition instructor during normal business hours while also serving as an Ottawa County Commissioner. (ECF No. 112-1, PageID.1791-1802; ECF No. 112-

---

[6] The MSU Defendants incorporate by reference the arguments and legal authority set forth in their response to Plaintiff's motion to compel, and their response to Plaintiff's appeal of Magistrate Judge Kent's order denying Plaintiff's motion to compel.

3, PageID.1809; ECF No. 112-4, PageID.1812; ECF No. 112-5, PageID.1818). Erin Moore testified that at a meeting with Plaintiff in early December of 2023, shortly after Plaintiff first notified her that he intended to campaign for an Ottawa County Commissioner seat, he was told that he would not be able to serve simultaneously in both roles if he was elected based on "time commitments alone." (ECF No. 112-5, PageID.1818-1820). Mr. Shane testified regarding concerns relating to the time commitment issue as follows:

> So in that conversation [referring to a meeting on December 5, 2023] is when we had the discussion about us as MSU Extension not being willing to provide him the ability to do both roles. So the amount of time that we felt it was going to take as a county commissioner being directly in conflict with his – with his role as a community nutrition instructor, the amount of time that that would take. We said if you were elected, then we'd have to have a different conversation about your role because you can't do both simultaneously. We talked about conflict. We talked about the – the inability to do both of those jobs based on the time constraints.

(ECF No. 112-3, PageID.1809). Consistent with the testimony of Erin Moore and Matthew Shane, and the affidavits of each of the MSU Defendants, M. Scott Korpak also testified that the MSU Defendants believed that it would be "impossible" for Plaintiff to fulfill his responsibilities as a community nutrition instructor while also serving as an Ottawa County Commissioner. (ECF No. 112-4, PageID.1815).[7]

### D. The legitimate and lawful reasons offered as the bases for Plaintiff's termination have not shifted or changed.

Plaintiff also argues that because the bases offered by the MSU Defendants for Plaintiff's termination have allegedly "shifted," those bases are pretextual. (ECF No. 108, PageID.1652). In support of this argument Plaintiff cites to *Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112

---

[7] Plaintiff admitted that as early as November of 2023, he was aware that there may be challenges related to fulfilling his work responsibilities as a community nutrition instructor while also serving as an Ottawa County Commissioner; and that the obligations of his Board work would conflict with his normal work schedule. (ECF No. 112-7, PageID.1827-1828).

(6th Cir. 2007), an unpublished opinion construing Ohio law in the context of an employee age-discrimination claim. As a matter of law, *Coburn* does not stand for the proposition that some shift in a defendant's rationale for terminating an employee in the context of a First Amendment retaliation claim is evidence of pretext. Moreover, unlike the *McDonnell-Douglas* burden shifting framework, in First Amendment retaliation claims the burden does not shift back to the Plaintiff to show pretext after a defendant demonstrates that the employment decision would have been the same absent the protected conduct. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012). Finally, unlike the defendants in *Coburn*, who testified inconsistently with respect to who sought to terminate the plaintiff, the MSU Defendants have steadfastly asserted that Plaintiff was terminated for a combination of the following three reasons: (1) concerns relating to conflicts of interest; (2) concerns relating to conflicting time commitments; and (3) concerns relating to the Michigan Incompatible Public Offices Act. *Coburn*, 238 F. App'x at 121. These bases were set forth in the MSU Defendants' affidavits filed in support of their response in opposition to Plaintiff's motion for preliminary injunction, dating back to before the MSU Defendants even answered Plaintiff's complaint, and they have not "shifted" in any discernible way during the course of the litigation. (ECF No. 15-A, 15-B, 15-C, PageID.100-111).[8]

### E. The MSU Defendants are not bound by educational resources made available to public officials.

Finally, in response to the MSU Defendants' motion for summary judgment Plaintiff argues that a reasonable juror could find the reasons stated in support of Plaintiff's termination to be

---

[8] Further, the record is clear, concerns relating to time commitments and potential conflicts of interest were discussed with Plaintiff in December of 2023, after he announced that he was running for the Ottawa County Board; and concerns relating to the Incompatible Public Offices Act were shared as an additional basis for Plaintiff's termination in May of 2024, after he was elected.

pretextual because the MSU Defendants allegedly did not follow the advice set forth in (a) an article published on the MSU Extension website; and (b) portions of the MSU Extension Guide to Michigan County Government that discuss the Incompatible Public Offices Act. (ECF No. 108, PageID.1653-1655). First, the article that Plaintiff references is intended to provide public officials with a working knowledge of the difference between conflicts of interest and possible violations of the Incompatible Public Offices Act (ECF No. 108-5, PageID.1692-1697) and the Guide to Michigan County Government is a resource intended for local government officials intended to help effectively deliver public services. Nothing contained in either resource, nothing contained in the record here, and no legal authority supports the assertion that MSU Extension is somehow bound by either in dealing with Plaintiff.[9]

Further, Plaintiff's assertion that the question of whether serving simultaneously as a community nutrition instructor and as an Ottawa County Commissioner violates the Incompatible Public Offices Act can only be resolved through a declaratory action in circuit court is based on an obvious misreading of the statute. (ECF No. 108, PageID.1654-1656). The Incompatible Public Offices Act states in relevant part that "[t]he attorney general or a prosecuting attorney *may* apply to [a] circuit court… for injunctive or other appropriate relief or remedy." MCL § 15.184 (emphasis added). This permissive language certainly provides one possible mechanism whereby parties might be able to obtain clarification on whether particular roles are incompatible under the statute. However, nothing in the Incompatible Public Offices Act can be read to require a public employer

---

[9] Plaintiff does not claim that the MSU Defendants failed to follow or correctly apply any of the operative written policies that they are in fact bound by here, i.e., the MSU Extension Administrative Handbook (ECF No. 112-9, PageID.1845), the MSU Guidelines for Participation in Campaign Activities (ECF No. 112-8, PageID.1835-1840), and the MSU Outside Work for Pay Policy (*Id.*, PageID.1841-1843).

to request a state attorney general or county prosecutor obtain a declaratory ruling from a circuit court when they believe in good-faith that they are faced with a potential violation of the Act.

### III. CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, the law and arguments set forth in the MSU Defendants opening brief, and the law and arguments set forth in the MSU Defendants' response to Plaintiff's cross-motion for summary judgment, the MSU Defendants request this Court grant the MSU Defendants' motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

_____
Matthew R. Daniels (P75601)
MSU Office of General Counsel
426 Auditorium Road, Room 494
East Lansing, MI 48823
T: (517) 353-4959
E: danie188@msu.edu

### INDEX OF EXHIBITS

Exhibit 1:   Christian Kleinjans Deposition Testimony (relevant excerpts)

Exhibit 2:   M. Scott Korpak Deposition Testimony (relevant excerpts)

Exhibit 3:   James Kelly Deposition Testimony (relevant excerpts)

Exhibit 4:   Matthew Shane Deposition Testimony (relevant excerpts)

Exhibit 5:   MSU Extension Budget Documentation

Exhibit 6:   Erin Moore Deposition Testimony (relevant excerpts)

Exhibit 7:   Joe Moss Deposition Testimony (relevant excerpts)

**CERTIFICATE OF COMPLIANCE**

As required by LCivR 7.2(b)(i), I hereby certify that this response brief includes 3,839 words including heading, footnotes, citations and quotation and not including the case caption, cover sheet, any table of contents, table of authorities, the signature block, attachments, exhibits, and affidavits. This word count was generated by Microsoft Word, the processing software utilized to draft this brief.

_____
Matthew R. Daniels (P75601)
Attorney for the MSU Defendants