**EXHIBIT 7**

CHRISTIAN KLEINJANS v M. SCOTT KORPAK
MOSS, JOE 04/01/2025

Page 222

1 A.  Yes.

2 Q.  You wanted to know -- you and administrators, other board

3     members, wanted to know about what the county pays for with

4     respect to MSU Extension; is that right?

5 A.  Yes.

6 Q.  How MSU Extension communicates what its mission and its

7     efforts entail, how they communicate that to the community,

8     did you want to know about that?

9 A.  Speaking personally, yes.

10 Q.  Okay.  And so did that lead then to Michigan State

11    University Extension providing you with information about

12    Extension and also meeting with you on December 7th or 8th

13    and then again on January 5th?

14 A.  Yes.

15 Q.  Okay.

16 A.  December 7th they provided a lot of information.

17 Q.  Okay.  And then after those meetings take place -- what was

18    marked as Plaintiff's Exhibit 8 is a letter from Matt Shane

19    to you and John Gibbs.  After you've looked at some of the

20    information from Extension about what they do and you've met

21    with them twice you get that letter from Matt Shane; is that

22    right?

23 A.  Correct.

24 Q.  Okay.  It's your testimony here today, Mr. Moss, that you

25    did not remove the MOU from the consent agenda and then use

Page 223

1     that as leverage over MSU Extension and Ottawa County to try

2     to somehow retaliate against Christian Kleinjans in the form

3     of moving him out of the county or potentially terminating

4     him; is that right?

5 A.  Correct.

6 Q.  Okay.  And I'll have some more detailed questions about that

7     in a minute, but do you agree with me that what's alleged in

8     the lawsuit in this case is contrary to that testimony, that

9     the Plaintiff is claiming that you sought to use the MOU to

10    get Michigan State University Extension to take some adverse

11    action against Mr. Kleinjans?

12 A.  Correct.

13 Q.  Okay.  And do you also understand that there's actually been

14    some testimony in this case that the MSU defendants, at

15    least Mr. Korpak, probably Mr. Shane as well and maybe

16    Erin Moore, they may have interpreted some of your comments

17    to mean that you were threatening that the MOU would get

18    held up or that it wouldn't get approved unless they did

19    what you wanted with Mr. Kleinjans?

20 A.  I don't think I've had any interaction with Matt Shane or

21    Erin Moore, so I really don't know what they think or what

22    they felt.  I think -- you know, I can see, like from this

23    email in Exhibit 18, you know, Mr. Kelly was confused and

24    had never experienced a board that really asked a lot of

25    questions and wanted to know more detail, or maybe he had

Page 224

1     never experienced a turnover of 8 out of 11 board members

2     before who had no knowledge of MSU Extension and who were

3     also willing to ask questions.

4         Like I see that in here.  Does that answer your

5     question?

6 Q.  I think so.  Let me try to ask it a little bit more

7     directly.

8         You understand or you know that the MSU defendants

9     have at least given some indication that they may have

10    understood what you were doing in November or December to

11    sort of be threatening them.  Understanding that you are

12    saying that that is a miscommunication, but they may have

13    understood it that way?

14 A.  Yes.

15 Q.  Okay.  And so again, though, whether there was a

16    miscommunication or not, in January of 2024, if you're

17    looking at Plaintiff's Exhibit 8, no one took any adverse

18    action against Mr. Kleinjans at that time.  Do you agree

19    with that?

20        MS. HOWARD:  Objection, mischaracterizes the

21    testimony.

22 A.  I agree.

23 BY MR. DANIELS:

24 Q.  Okay.

25 A.  Yes.

Page 225

1 Q.  So my point is is that even had there been a

2     miscommunication, or even if you had, just for the sake of a

3     hypothetical, sought to use the MOU against Extension, that

4     wasn't successful, right?  Because they didn't move

5     Mr. Kleinjans out of his position at Ottawa County during

6     his campaign, did they?

7         MR. LAMB:  Objection, form.

8         You can answer.

9 A.  Correct.

10 BY MR. DANIELS:

11 Q.  Okay.

12 A.  All questions were answered, there was nothing pending,

13    MSU Extension was forthright, helpful.

14        It was an -- it was an extremely busy time.  There

15    was Thanksgiving, Christmas, New Year's, a new commissioner

16    appointed; maybe some of the delay from some of those

17    meetings caused somebody more concern than it should have.

18    But, I mean, it was -- the whole thing was handled

19    relatively quickly and very easily.

20 Q.  And, Mr. Moss, did you testify earlier that in your

21    discussions with MSU Extension, whether it was in December

22    of '23 or January of '24, what they communicated to you was

23    that Mr. Kleinjans, based on their policy, was free to

24    campaign for an Ottawa County board seat?

25 A.  That was exceedingly clear.

Case 1:24-cv-00643-HYJ-RSK    ECF No. 121-7,  PageID.1970    Filed 11/14/25    Page 3
of 3

CHRISTIAN KLEINJANS v M. SCOTT KORPAK
MOSS, JOE 04/01/2025

Job 39306
226..229

Page 226

1 Q.  Okay.
2       Okay.  So I'm sorry to belabor all those points.
3   I think that was clear from what you said earlier, but what
4   I think is maybe a little bit unclear here is that there's
5   then this period after January 5th moving into the time when
6   this lawsuit was initially filed in June of 2024.
7 A.  Okay.
8 Q.  During that period did you have any discussion with any of
9   the MSU defendants about what might happen if Christian
10  Kleinjans was elected during the special election to an
11  Ottawa County board seat?
12 A.  No.
13 Q.  Okay.
14 A.  Zero.
15 Q.  Do you know of anyone affiliated with Ottawa County, whether
16  a board member, former or present, whether it's an
17  administrator, Jordan Epperson, Gretchen Cosby, anyone, do
18  you know of anyone communicating with the MSU Extension --
19  I'm sorry, the MSU defendants about what would happen if
20  Mr. Kleinjans was elected after that January date?
21 A.  No.  And I was looking for one of the exhibits that I think
22  specifically said we look forward to -- you know, we're
23  thankful for the hundred years of partnership and look
24  forward to working together in the future.
25 Q.  Okay.

Page 227

1 A.  I mean, nothing ever came up after that.  Like I said, there
2   were no other questions.  There was a lot of information
3   shared.
4 Q.  Okay.  So did you ever seek to intimidate anyone at
5   MSU Extension, directly or through implied threats, to take
6   some kind of adverse action against Mr. Kleinjans?
7 A.  No.
8 Q.  Okay.  Are you aware of anybody associated or affiliated
9   with the Ottawa County board in any way seeking to
10  intimidate the MSU defendants in an effort to get them to
11  take some adverse action against Mr. Kleinjans?
12 A.  No.
13 Q.  Okay.
14 A.  Our board has been well-known for asking questions.  I will
15  say sometimes people take offense to that, but that's the
16  job of an elected official is to ask questions and learn
17  more and make decisions.
18 Q.  And is it fair to say that you learned about MSU Extension
19  in Ottawa County in late '23, early '24, and you were
20  satisfied with their work?  Is that right?
21 A.  Yes.
22 Q.  Okay.  And that is why you ultimately approved the MOU,
23  correct?
24 A.  That's why the board did, yes.
25 Q.  Okay.

Page 228

1 A.  Absolutely.
2       If I could repeat, I, to the -- my best knowledge
3   no board members knew anything about MSU Extension until
4   November of '23.  Almost nothing.  That's -- that's my
5   knowledge, that's my best understanding.  There was no
6   director in the -- I believe there was no director in the
7   county, it was a transition time, so it was very helpful to
8   meet and learn more.
9 Q.  Do you think it's correct to say that the MSU defendants
10  have bowed and are bowing to political pressure from you or
11  anyone affiliated with the Ottawa Impact majority with
12  respect to the actions that they've taken against
13  Mr. Kleinjans?
14 A.  No.
15 Q.  Okay.  And is that because you don't consider yourself as
16  ever having put political pressure on the MSU defendants to
17  take some particular action against Mr. Kleinjans?
18 A.  It's for multiple reasons.  So to the -- yes, that's -- it's
19  partially for that, but also there -- this is -- this is two
20  governmental entities working together.  It's -- it's a
21  board that has a contract or an MOU with MSU Extension and
22  MSU, you had board members asking questions and
23  MSU Extension answering them.
24 Q.  But I guess the other two -- two additional reasons might be
25  that, A, they sent you a letter that's documented in

Page 229

1   Exhibit 8 that says we're not going to take an adverse
2   action against Emily's campaign and then, B, subsequent to
3   that time you weren't having any communication with them
4   about Mr. Kleinjans; is that right?
5 A.  Could you say that again?
6 Q.  You weren't having any communication with them after
7   January 5th about what was going to happen to him?
8 A.  No, never.
9 Q.  Okay.
10 A.  I mean, it was -- so it sounds like we're talking about two
11  completely separate things.  I mean, they had -- yes, they
12  had an MOU, and, yes, the board approved it unanimously, but
13  that had nothing to do with Commissioner or soon to be or
14  later to be Commissioner Kleinjans.
15 Q.  Okay.  And have you ever talked to Erin Moore at all?
16 A.  No.
17 Q.  Okay.
18 A.  I don't believe so.
19 Q.  And have you ever instructed anyone to talk to Erin Moore?
20 A.  No.
21 Q.  Okay.  And did you testify earlier you've never actually
22  talked to Matt Shane before?
23 A.  No.
24 Q.  Okay.
25 A.  I don't know where they work, I don't know where they live,